UNITED STATES of America,
Plaintiff-Appellee,

v.

Otis PALMER, Defendant-Appellant.

No. 85–8894.

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 1987.

Michael C. Garrett, Augusta, Ga., for defendant-appellant.

Frederick Kramer, Asst. U.S. Atty., Savannah, Ga., for plaintiff-appellee.

Before VANCE and EDMONDSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

VANCE, Circuit Judge:

## I

Appellant Palmer was indicted in the Southern District of Georgia on three counts of willfully and knowingly attempting to evade the payment of income taxes in violation of 26 U.S.C. § 7201. After a five day trial, Palmer was found not guilty of violating 26 U.S.C. § 7201. The jury, however, returned a verdict of guilty on each count for the lesser included offense of willful failure to file a federal income tax return in violation of 26 U.S.C. § 7203. The district court sentenced Palmer to serve a term of three years in prison and pay a fine of $15,000. The district court further ordered Palmer to pay the total costs of the prosecution. The government submitted a bill for its costs totalling $57,-970. Palmer appeals the judgment and the imposition of costs.

## II

Appellant presents three issues for review:

(1) whether the district court committed prejudicial error in admitting evidence of Palmer's involvement in illegal drug sales;

(2) whether the costs of prosecution provision of 26 U.S.C. § 7203 unconstitutionally burdens a defendant's exercise of his right to a jury trial; and

(3) whether the district court erred in assessing all the prosecution's costs against Palmer.

## III

### A. Evidence of Palmer's Involvement in Drug-Related Activity

■ Appellant complains that the trial judge improperly admitted evidence about Palmer's involvement in illegal drugs. He argues that this evidence of drug activity was so irrelevant and highly prejudicial

that a new trial is required. There is no merit to this contention. The trial judge found substantial prosecutorial need for introducing the evidence of illicit drug sales. Palmer's involvement with drugs served to contradict his defense at trial that he was merely ignorant of his duty to file tax returns and lacked any intent to evade the payment of taxes. From the illegal source of the funds, a jury could reasonably infer an intent to conceal income. The evidence of his drug activity established a motive for Palmer's conduct: his extensive use of currency, failure to maintain records, acquisition of property in the names of family members, and failure to file tax returns can be understood to be affirmative acts of tax evasion.

The district court was careful to minimize any possible prejudice by giving clear limiting and final instructions to the jury. Throughout the trial, the district court maintained the jury's focus on the tax issues properly before it. *See, e.g., United States v. Tafoya,* 757 F.2d 1522, 1527–28 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 252, 88 L.Ed.2d 259 (1985). The jury's verdict of acquittal on the tax evasion counts demonstrates not only the success of the limiting instructions but also the jury's ability to consider impartially the tax charges against Palmer. Palmer argues that evidence of his drug involvement should have been excluded as unduly prejudicial under Rule 403 of the Federal Rules of Evidence.[1] This court has previously cautioned that a district court's "Rule 403 determination ... is accorded broad discretion, which we review only for clear abuse." *United States v. King,* 713 F.2d 627, 631 (11th Cir.1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1924, 80 L.Ed.2d 470 (1984). In light of the obvious prosecutorial need and the careful limiting instructions, the district court in no way abused its broad discretion in admitting evidence of Palmer's drug activity. *See United States v. Carrillo,* 561 F.2d 1125, 1127 (5th

---

1. Fed.R.Evid. 403 provides:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

   confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Cir.1977) (evidence of illegal sources of income "inextricably tied to the basic elements of proof of filing false tax returns"); *United States v. Tafoya,* 757 F.2d at 1527 & n. 6 (defendant's unindicted criminal behavior necessary to prove tax violations) (and cases cited therein).

**B. Constitutionality of the Costs of Prosecution Provision of 26 U.S.C. § 7203.**

In this case, this circuit addresses the constitutionality of the costs of prosecution provision of 26 U.S.C. § 7203 for the first time. The two circuit courts that have confronted this issue have upheld the constitutionality of the imposition of costs on a convicted defendant. *United States v. Wyman,* 724 F.2d 684 (8th Cir.1984); *United States v. Chavez,* 627 F.2d 953 (9th Cir. 1980), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1376, 67 L.Ed.2d 353 (1981). We agree.

The challenged statute provides, in pertinent part:

> Any person ... [who willfully fails to file a return, supply information, or pay tax required by law] shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, *together with the costs of prosecution.* [Emphasis supplied.]

The statute's grammatical structure and use of the word "shall" compel the conclusion that the costs of prosecution penalty is mandatory. *See United States v. Wyman,* 724 F.2d 684, 688 (8th Cir.1984); *United States v. Chavez,* 627 F.2d 953, 954–55 (9th Cir.1980), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1376, 67 L.Ed.2d 353 (1981); *United States v. Troiani,* 595 F.Supp. 186, 187 (N.D.Ill.1984).[2]

Appellant relies principally on *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). In *Jackson*

the Supreme Court declared unconstitutional a provision of the Federal Kidnapping Act that authorized the death penalty if a jury so recommended it, but contained no procedure for imposing the death penalty upon a defendant who waived his right to a jury trial or pleaded guilty. The Supreme Court held that the death penalty provision had the "inevitable effect" of "discourag[ing] assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." *Id.* at 581, 88 S.Ct. at 1216 (footnote omitted). Although the death penalty provision served proper governmental purposes, these objectives "cannot be pursued by means that needlessly chill the exercise of basic constitutional rights.... [T]he question is whether the effect is unnecessary and therefore excessive." *Id.* at 582, 88 S.Ct. at 1216. Palmer argues that the mandatory costs of prosecution provision of § 7203, like the death penalty provision in *Jackson,* "unnecessarily" and "needlessly" chilled his right to demand a jury trial.

Palmer claims further support from *United States v. Glover,* 588 F.2d 876 (2d Cir.1978). While upholding a discretionary costs of prosecution provision in 28 U.S.C. § 1918(b), the *Glover* court intimated that a mandatory provision might be unconstitutional. It opined that "[i]f the statute directed that costs of prosecution be assessed against all convicted defendants, there would be some basis for concern that it served to 'chill the assertion of constitutional rights by penalizing those who choose to exercise them.'" *Id.* at 878 (quoting *Fuller v. Oregon,* 417 U.S. 40, 54, 94 S.Ct. 2116, 2125, 40 L.Ed.2d 642 (1974)).

The Supreme Court has consistently refused to adopt the broad reading of *Jackson* that the appellant urges here, and we thus decline to follow any dicta in *Glover*

---

**2.** "The use of the word 'shall' in the statute, although not entirely controlling, is of significant importance, and, indicates an intention that the statute should be construed as mandatory." *United States v. Chavez,* 627 F.2d at 955 (quoting *United States v. Rands,* 224 F.Supp.

305, 306–07 (D.Or.1963), *reversed on other grounds,* 367 F.2d 186 (9th Cir.1966), *reversed,* 389 U.S. 121, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967)). The language in predecessor statutes also supports the mandatory imposition of costs. *See* 627 F.2d at 954.

to the contrary. As the Court stated in *Chaffin v. Stynchcombe*, 412 U.S. 17, 30, 93 S.Ct. 1977, 1984, 36 L.Ed.2d 714 (1973), "*Jackson* did not hold, as subsequent decisions have made clear, that the Constitution forbids every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." *Chaffin* involved a constitutional challenge by a defendant who received a harsher sentence on retrial than he had at the original trial. The Court found no constitutional infirmity, despite Chaffin's claim that *Jackson* compelled that the harsher sentence be struck down. The *Chaffin* court ruled that Chaffin's rights were not impermissibly chilled since the threat of a harsher sentence was speculative and simply another of the difficult choices which were an "inevitable attribute" of our judicial system. *Id.* at 31, 33–35, 93 S.Ct. at 1986–87.

Similarly, in *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), the defendant argued that *Jackson* mandated the invalidation of an Oregon recoupment scheme. Oregon required indigent defendants who subsequently acquired financial resources to repay the state the costs of their legal defense. Fuller contended that the knowledge that he may later be obligated to repay the costs of his legal defense could have impelled him to decline the services of an appointed attorney, and thus his constitutional right to counsel was chilled. The Supreme Court rejected this argument. Since the recoupment statute was tailored to impose an obligation on only those who were able to repay costs, assessing costs on these defendants was not unnecessary to achieve its governmental purposes nor was it likely to substantially chill a defendant's rights.

The Supreme Court in *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978), again cautioned that "[t]he cases in this Court since *Jackson* have clearly established that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." *Id.* at 218, 99 S.Ct. at 497 (footnote omitted).

The defendant in *Corbitt* attacked a New Jersey homicide statute which made life imprisonment the mandatory punishment for defendants convicted of first-degree murder, but which allowed a judge to impose either life imprisonment or the second degree murder term of not more than 30 years for a defendant who enters a plea of *non vult*. The Supreme Court concluded "that *Jackson* does not require a reversal of Corbitt's conviction.... [T]he pressures to forgo trial and to plead to the charge in this case are not what they were in *Jackson*." *Id.* at 217, 99 S.Ct. at 496. The State is within its rights in encouraging a guilty plea by offering substantial benefits in return for the plea.

> The States and the Federal Government are free to abolish guilty pleas and plea bargaining; but absent such action, as the Constitution has been construed in our cases, it is not forbidden to extend a proper degree of leniency in return for guilty pleas.

*Id.* at 223, 99 S.Ct. at 499. *See also McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) (Ohio procedure where jury determined both guilt and punishment in single trial did not violate *Jackson*), *vacated on other grounds*. 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (*Jackson* did not require invalidation of every guilty plea entered under the Federal Kidnapping Act prior to *Jackson* decision); *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976) (additional financial cost and potentially harsher sentence in Massachusetts two-tier system of initial non-jury trial and optional *de novo* jury trial did not violate *Jackson*).

■ The Congress may have had any number of constitutionally permissible purposes in approving the costs of prosecution provision of § 7203. The legitimate governmental ends would include recovery of expenditures by the government and imposition of additional punishment. The provision achieves these objectives without needlessly chilling the exercise of constitutional

rights. Unlike the Federal Kidnapping Act in *Jackson*, § 7203 does not involve "the death penalty, which is 'unique in its severity and irrevocability.'" *Corbitt v. New Jersey*, 439 U.S. at 217, 99 S.Ct. at 496 (quoting *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Although the *Jackson* rationale is not limited to death penalty cases, the greater "chilling effect" of a death sentence undeniably represents a material factor in evaluating the burden on constitutional rights. *See id.; Hitchcock v. Wainwright*, 770 F.2d 1514, 1525 (11th Cir.1985) (Johnson, J., dissenting from en banc decision), *cert. granted in part*, ─── U.S. ───, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986). Equally important is that § 7203 does not necessarily subject a criminal defendant to substantially increased punishment. The mere *possibility* of a substantial increase does not have an impermissibly chilling effect on the rights of a defendant. As the Ninth Circuit reasoned in *Chavez*:

> We cannot say with any confidence that the costs of prosecution provision of § 7203 does in fact penalize a defendant's exercise of his constitutional rights. Section 7203 provides for a punishment of not more that $10,000, or more than one year imprisonment, or both. Any sentence that would be imposed upon conviction, within those bounds, would be within the ordinary discretion of the trial judge. The presence of the mandatory costs of prosecution provision does not, with any degree of certainty, substantially increase the threatened punishment. Any encouragement of the waiver of constitutional rights that this provision may induce is substantially different from the pressures that undeniably existed in *Jackson*, and cannot be said to be an impermissible burden upon the exercise of constitutional rights. In light of the fact that the provision does serve legitimate government purposes, we cannot say that it needlessly encourages the waiver of constitutional rights.

627 F.2d at 957. *See also United States v. Wyman*, 724 F.2d 684, 688 (8th Cir.1984).

### C. Calculation of the Costs of Prosecuting Palmer

■ Appellant maintains that even if the costs of prosecution provision of § 7203 is constitutional, the $57,970 figure assessed by the district court in this case is excessive. It is inequitable to tax him for these costs, in Palmer's view, because the government could have obtained the same result without the expense of a trial. Palmer claims that he never denied that he willfully failed to file timely returns and that he had offered to plead guilty to a violation of § 7203 in exchange for the government's dropping of the other charges against him. Nevertheless, the fact remains that Palmer did not plead guilty. He contested the charges and the government was obligated to incur significant costs in proving that he willfully failed to file a return. The government was under no obligation to enter into any plea bargaining or to accept any deal offered by Palmer. *See Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977); *United States v. Pleasant*, 730 F.2d 657, 664 (11th Cir.), *cert. denied*, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984). A myriad of factors enter into plea bargaining decisions, and the decision to reject a proposed deal is entirely within the prosecutor's discretion. A defendant cannot thwart the statutorily mandated imposition of the costs of prosecution by proposing a plea bargain offer. Palmer could have minimized his liability for costs of prosecution by pleading guilty to the crime of which he was convicted. Merely offering to plead guilty during plea negotiations is insufficient to relieve Palmer of the costs of prosecution.

■ Appellant also complains that the district court erred in assessing him with all the prosecution's costs, rather than only those costs incurred in proving the § 7203 violation. The government in its arguments to this court conceded that the $57,970 figure improperly includes costs attributable to its unsuccessful attempt to prove that Palmer violated § 7201. There is no dispute that "a defendant convicted on few-

er than all the counts of an indictment cannot be properly taxed with the costs of the counts on which he was aquitted or otherwise discharged." *United States v. Troiani,* 595 F.Supp. 186, 187 (N.D.Ill. 1984). *See also United States v. DeBrouse,* 652 F.2d 383 (4th Cir.1981); *United States v. Miller,* 223 F. 183 (S.D.Ga.1915); *Commonwealth v. Smith,* 329 Pa.Super. 440, 361 A.2d 881 (Pa.Super.Ct.1976). The government assures this court that only four witnesses offered testimony which was not material to the offense for which the defendant was convicted. The government states that the cost of presenting these four witnesses was $3,525 and agrees that the imposition of costs ordered by the district court should be reduced by that amount. Palmer, on the other hand, strongly protests the government's allocation of costs. He argues that much of the evidence offered by the government went toward proving the elements of the offense of tax evasion and that the costs of putting on this evidence far exceeded $3,525. It would be inappropriate for this court to resolve this factual dispute. In addition, the evidence presented must be more than merely relevant, the cost incurred in presenting such evidence must be reasonable and necessary to the proof of the § 7203 offense. The district court is the proper factfinder to determine which of the costs incurred by the prosecution were reasonable and necessary to prove Palmer's violation of § 7203. We return this case to the district judge for this determination.

## IV

We find no error in the district court's conduct of the trial and affirm the judgment of guilty. We also uphold the constitutionality of the costs of prosecution provision of § 7203. The taxation of costs serves legitimate governmental purposes and does not impermissibly chill the rights of defendants. The district court erred, however, in assessing Palmer with costs that were properly allocable to the § 7201 charge of which he was acquitted. Consequently, we vacate the district court's cost award and remand this case to the district court to determine what portion of the prosecution's costs were reasonable and necessary to prove Palmer's violation of § 7203 and to enter an order imposing costs in accordance with its findings.

AFFIRMED in part; VACATED in part and REMANDED.